**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

_____

:

In re:                                    :

:          CHAPTER 13

SHARON DAVIS,                             :

:          CASE NO.:    16-33116 (SLM)

Debtor.                                   :

_____  :

**Order Filed on August 29, 2019
by Clerk, U.S. Bankruptcy
Court - District of New Jersey**

## OPINION

**A P P E A R A N C E S :**

Sharon Davis
1029 East Blancke Street
Linden, NJ 07036
*Pro Se*

Walter D. Nealy, Esq.
Walter D. Nealy, PC Attorney at Law
100 South Van Brunt Street
Englewood, NJ 07631
*Pro Se*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

This matter is before the Court on *Debtor's Motion to Compel, Walter D. Nealy, Attorney at Law to Disgorge Attorney's Fees* ("**Disgorgement Motion**") filed by debtor Sharon Davis ("**Debtor**") (Docket No. 64) on the basis that counsel Walter D. Nealy, Esq. ("**Counsel**") provided inconsistent payment records to the Court and "colluded with the adversary" throughout the Debtor's case. This Court *sua sponte*, raised the issue of whether Counsel provided the requisite "debt relief agency" disclosures to Debtor as required by Title 11 of the United States Code ("**Bankruptcy Code**"). The Court heard oral argument, allowed for subsequent briefing, and reserved. The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 and amended September 18, 2012. These matters constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) because payment of professional fees implicates the administration of the estate. Additionally, this matter arises under 11 U.S.C. § 329(b), §§ 526, 527, and 528 of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 2017. *See* 28 U.S.C. § 157(b)(1). Venue is proper under 28 U.S.C. § 1408. The Court retained jurisdiction in this dismissed case to decide the Debtor's attorney's compensation and whether fees should be disgorged.[1]

2

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Debtor's Bankruptcy Case

On December 3, 2016, Debtor filed a *Chapter 13 Voluntary Petition* (the "**Petition**").[2] Debtor also filed a *Chapter 13 Plan* (the "**Initial Plan**").[3] Counsel utilized Case Management/Electronic Case Files ("**ECF**") to docket these pleadings on Debtor's behalf.[4] In addition to the Petition and Initial Plan, Counsel also filed a *Disclosure of Compensation of Attorney for Debtor(s)* (the "**Rule 2016 Disclosure**").[5] According to the Rule 2016 Disclosure, Counsel agreed to accept $3,500 for legal services, of which he received $1,500 prior to the filing of the Rule 2016 Disclosure.[6] Counsel listed the "Balance Due" from Debtor as $2,000.[7]

On December 19, 2016, Debtor filed a *Notice of Request for Loss Mitigation – By the Debtor* ("**Loss Mitigation Application**").[8] Debtor sought loss mitigation with respect to 1029 East Blancke Street, Linden, New Jersey (the "**Property**"). Debtor identified Caliber Home Loans, Inc., as servicer for US Bank Trust, N.A., ("**Caliber**") as the mortgagee of the Property. On January 5, 2017, the Court entered an Order granting the Loss Mitigation Application with a termination date of April 5, 2017 for the loss mitigation period.[9] The Court held a hearing on confirmation of the Initial Plan and entered an *Order Confirming Plan* (the "**Confirmation Order**") on February 14, 2017.[10] The Court also entered three additional Orders further extending the loss mitigation period.[11]

On July 10, 2017, Caliber filed a *Motion for Order Allowing Late Proof of Claim* ("**Late Claim Motion**") stating that it was unable to file a timely proof of claim prior to the bar date of April 17, 2017 "due to delays in the accumulation of documents."[12] Counsel filed opposition to the Late Claim Motion.[13] A hearing was scheduled for August 9, 2017, but the Court adjourned the matter upon the parties' consensual request.

3

On February 5, 2018, the Chapter 13 Trustee filed a *Certification in Support of Default* because Debtor failed to comply with the Confirmation Order.[14] The Debtor failed to, among other things, either sell or refinance the Property (with the proceeds to fund the plan), or complete a loan modification by April 5, 2017.[15] So, the Chapter 13 Trustee sought dismissal. Debtor on a *pro se* basis, although still represented by Counsel, filed opposition.[16] Debtor, also on a *pro se* basis, filed an objection to Caliber's proof of claim (Claim No. 26-1) ("**Debtor's Claim Objection**").[17]

On April 16, 2018, the Court entered an *Order Permitting Debtor to Cure Arrearages to Trustee* that resolved the Chapter 13 Trustee's *Certification in Support of Default* and required the Debtor to file a modified plan by April 18, 2018.[18] Counsel filed a modified Chapter 13 Plan on April 17, 2018 ("**Modified Plan**").[19]

On April 27, 2018, Caliber filed a response to Debtor's Claim Objection.[20] Caliber also filed an objection to confirmation of the Modified Plan.[21] On May 8, 2018, the Court held a hearing on various pending matters and both Counsel and Debtor were present. At the onset of the hearing, Counsel stated that he could no longer serve as Debtor's attorney due to a conflict of interest resulting from a complaint Debtor filed in the District Court naming Counsel as a defendant. The Court recognizing the actual conflict between Debtor and Counsel permitted Debtor (at Debtor's behest) to proceed *pro se*, and the Court heard oral argument on the Late Claim Motion and Debtor's Claim Objection. The Court entered an *Order Denying Motion or Application for the Entry of an Order to File Claim After Claims Bar Date*,[22] and the Court adjourned the Debtor's Claim Objection, which contained the same claims that were simultaneously being asserted by Debtor in the complaint filed in District Court.

On May 11, 2018, Counsel filed a *Motion to Withdrawal [sic] as Counsel for Sharon Davis* (the "**Withdrawal Motion**").[23] Counsel requested the motion be heard on shortened time, which

4

the Court granted.[24]  Counsel argued that his withdrawal was necessary because Debtor named him as a defendant in *pro se* litigation she filed in the District Court.[25]  The Court entered an Order granting the uncontested Withdrawal Motion on May 23, 2018.[26]

On September 26, 2018, after multiple adjournments, the Court held a confirmation hearing on the Modified Plan.  Debtor appeared *pro se* at the confirmation hearing on the Modified Plan.  At the hearing, Debtor expressed her intention to file a motion to disgorge fees from Counsel.  The Court ruled an Order would be entered dismissing the case because the Debtor failed to rectify the issues necessary to confirm the Modified Plan.  However, the Court agreed to retain jurisdiction to allow time for Debtor to file a motion regarding attorney's fees so long as she did so within thirty days of dismissal.  On October 25, 2018, the Court entered the *Order Denying Confirmation and Dismissing Petition*.[27]  In the Order, the Court retained jurisdiction to hear the fee dispute between Counsel and the Debtor so long as Debtor met the thirty-day time requirement.[28]

**The Disgorgement Motion**

On October 25, 2018, Debtor timely filed the *Debtor's Motion to Compel, Walter D. Nealy, Attorney at Law to Disgorge Attorney's Fees* (the "**Disgorgement Motion**").[29]  Consistent with the Rule 2016 Disclosure, Debtor states that Mr. Nealy quoted her a $3,500 fee.[30]  However, Debtor states that Counsel required her to pay $2,000 to be paid before filing the petition, whereas the Rule 2016 Disclosure states that the Debtor only paid $1,500 pre-petition.[31]  Debtor alleges that there was a post-petition assignment of her mortgage to Caliber without proper authorization to do so.[32]  Debtor also generally challenges Counsel's strategy with respect to the Late Claim Motion.[33]  Debtor states she believes that Counsel was "colluding with the adversary" by failing to object to the Trustee's *Certification of Default*.[34]  Debtor alleges this failure would result in a

5

dismissal of Debtor's case, forcing the Debtor to file a new bankruptcy case, and thereby permit Caliber to then file a timely proof of claim.[35]

Debtor states "Mr. Nealy's entire scheme was to collude with the adversary to pressure the Debtor into an unconscionable mortgage payment, while accepting a retainer under false pretenses."[36] Debtor further argues that her case was dismissed due to Counsel's "unethical and unscrupulous actions."[37] Debtor requests that the Court review Counsel's fees and require disgorgement.[38] Debtor attaches the following exhibits to her *Certification in Support of Debtor's Motion to Compel, Walter D. Nealy, Attorney at Law to Disgorge Attorney's Fees*:

- Exhibit A – Invoice # 1052 identifying payments made to Counsel;[39]

- Exhibit B – A copy of the Rule 2016 Disclosure;[40]

- Exhibit C – Trustee Report of Disbursements (showing a $1,163.66 payment to Counsel);[41]

- Exhibit D – A letter from Counsel to Debtor dated April 6, 2018 in which Counsel: (1) recommends Debtor consider accepting the loan modification offer; (2) advises that if Debtor does not accept the modification and the case is converted to a Chapter 7, that Debtor may need to file an adversary complaint to address the concerns raised in the Debtor's Claims Objection; and (3) "is not prepared to represent [Debtor] in an adversary proceeding . . . .";[42]

- Exhibit E – NACA Home Save Program Assessment;[43] and

- Exhibit F – Post-petition Assignment of Mortgage dated January 18, 2017.[44]

On November 21, 2018, Counsel *pro se* filed his *Certification in Support of Opposition to Debtor's Motion to Disgorge Fees* ("**Counsel's Opposition**").[45] Counsel states that he disclosed a "no look" fee of $3,000 in the case and that he actually received $2,000.[46] After the case was confirmed, Counsel states he received $1,903.07 from the Chapter 13 Trustee, totaling $3,903.07 in legal fees received.[47] Minus costs of $430, the net amount received by Counsel was $3,473.07.[48] To support his assertion of legal fees received, Counsel attached the Debtor's executed retainer

6

agreement dated October 3, 2018 ("**Retainer Agreement**") as an exhibit.[49] Counsel further denied Debtor's allegations of a conflict of interest and a promise of a loan modification for a certain amount.[50] Counsel requests denial of the Disgorgement Motion in its entirety.

**Hearing on Disgorgement**

The Court held a hearing on Debtor's Disgorgement Motion ("**Disgorgement Hearing**"). At the hearing, Debtor stated that she did not believe any of Counsel's fees are reasonable. Debtor further alleged that Counsel failed to follow through on the promises he made to her regarding the loss mitigation program. Additionally, Debtor stated that Counsel failed to respond to her emails until she threatened to report him to the Court.

During the hearing, the Court questioned Counsel regarding three issues – two related to apparent misstatements in the pleadings filed by Counsel and the third regarding whether Counsel followed mandatory requirements set forth in the Bankruptcy Code in his representation of Debtor. First, the Court raised an inconsistency in Counsel's Rule 2016 Disclosure that states Counsel charged a retainer of $3,500,[51] whereas both Counsel's Opposition and the Retainer Agreement list the retainer as $3,000.[52] The Court asked Counsel for clarification. Counsel admitted that the Rule 2016 Disclosure he filed with the Court was incorrect. Counsel stated that the Retainer Agreement set forth a $3,000 retainer plus costs, which is the accurate amount agreed upon with the Debtor, plus costs. In sum, Debtor paid $2,000 to Counsel pre-petition and eventually a total amount of $3,473.07 to Counsel for legal fees.

Second, the Court identified an inconsistency in the agreed upon scope of legal representation in the bankruptcy matter. When the Court inquired about the scope of work done in the case, Debtor stated that aside from filing the petition, Counsel filed: (1) a letter opposition to the Late Claim Motion; (2) the Initial Plan; and (3) the Modified Plan on behalf of the Debtor.

7

Counsel explained that he entered into an agreement to represent Debtor in a Chapter 13 bankruptcy to attempt to obtain a loan modification and file a plan on Debtor's behalf. Counsel further expressed that he never agreed to represent Debtor in any adversary proceedings, even though he advised Debtor it may be needed to challenge Caliber's claim. The Retainer Agreement reflects that assertion. However, the Court then indicated that the Rule 2016 Disclosure filed with the Court expressly states that Counsel will represent "debtor in adversary proceedings and other contested bankruptcy matters."[53] Counsel once again admitted that the Rule 2016 Disclosure filed with the Court is incorrect.

Finally, the Court raised the issue, *sua sponte*, whether Counsel provided Debtor with the mandatory "debt relief agency" written disclosures made applicable to Chapter 13 cases pursuant to 11 U.S.C. § 527. Counsel responded obstinately throughout the initial Disgorgement Hearing. At first, Counsel appeared not to be familiar with the § 527 disclosures. The Court permitted counsel a few minutes to review the Bankruptcy Code. Counsel then asserted that he made the required disclosures in the Retainer Agreement. After further questioning by the Court, Counsel stated that he believed the referenced disclosures were instead in the bankruptcy information sheet he provides to his clients before the 341(a) meeting. After even more questioning by the Court, Counsel stated he believed he provided the requisite disclosures to Debtor orally. After numerous inconsistencies, Counsel ultimately admitted to the Court that he failed to give Debtor the § 527 disclosures in writing as required by the Bankruptcy Code. The Court queried the Debtor as to whether she wished to pay Counsel any fees. She responded that she did not. When the Court was prepared to rule on the issue, Counsel asked the Court to adjourn the matter and to provide Counsel with the opportunity to respond to the issues raised by the Court. Counsel argued that the fees should be allowed on the basis of the common law, equitable remedy of *quantum meruit,* since

8

Counsel failed to comply with the statutory requirements. The Court questioned Counsel as to how common law would override statutory requirements.

However, the Court granted Counsel's request and established a briefing schedule on the record. The briefing schedule was as follows: "Counsel must file his supplemental opposition by December 12, 2018. Movant's reply, if any, is due January 9, 2019." The hearing was continued to January 23, 2019. Counsel failed to file any further pleadings despite his request to do so. Therefore, Debtor had no need to file a reply.

Only Counsel appeared at the continued hearing. Upon the Court noting that nothing was filed after Counsel's request to further brief the issue of *quantum meruit*, Counsel stated that he prepared opposition but he inadvertently failed to file it. Counsel stated that he only discovered that the opposition was not filed on the day before the hearing. Yet, he still did not file it. Instead of requesting an adjournment to file the already "prepared" opposition, Counsel told the Court to rely on Counsel's Opposition previously filed with the Court on November 21, 2018. This was the same opposition relied upon in the previous hearing. Counsel never requested more time to file his "prepared" opposition.

## **DISCUSSION**

This is a case of first impression. The Third Circuit has not addressed the issue of an attorney's failure to comply with §§ 526–528 of the Bankruptcy Code. The Court is charged by the Bankruptcy Code in reviewing debtors' attorney's fees. Part of that review involves ensuring that debtor's counsel follows the mandates set forth in the Bankruptcy Code when representing a debtor.

The Court does not expect a self-represented individual to raise certain issues that are pure legal matters – such as the § 527 disclosures – on her own. Therefore, the Court queries, *sua*

9

*sponte*, whether Counsel provided Debtor with the requisite "debt relief agency" disclosures required by Debtor's Counsel in a Chapter 13 case. Ensuring debtor's counsel fulfilled his statutory obligations while in that role is one of the first steps in determining whether counsel is entitled to any fees related to the bankruptcy matter. Failure to fulfill those obligations may lead to an attorney disgorging fees or a denial of fees without any further review needed.

**<u>Counsel Failed to Comply with Mandatory Written Disclosure Requirements in the Bankruptcy Code</u>**

### A. Sections 526–528 Require a Debt Relief Agency to Provide Debtors with Certain Written Disclosures or be Liable for Certain Fees

The Bankruptcy Code requires debtors' attorneys to fulfill certain obligations when representing debtors in bankruptcy cases. The Bankruptcy Abuse Prevention and Consumer Protection Act ("**BAPCPA**") added provisions to the Bankruptcy Code to govern the relationship between "debt relief agencies" (debtors' attorneys) and "assisted persons" (debtors).[54] A "debt relief agency" is "any person who provides any bankruptcy assistance to an assisted person" in return for payment, such as consumer bankruptcy attorneys.[55] An "assisted person" is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $192,450."[56] "Consumer debt", in turn, is defined as "debt incurred by an individual primarily for a personal, family, or household purpose."[57]

Section 527 sets forth certain mandatory disclosure requirements that a debt relief agency must provide to debtors and the timeframe associated therewith.[58] Section 527 requires a debt relief agency to maintain copies of those disclosures for two years.[59] Specifically, § 527 requires, among other things, debt relief agencies to provide written notice to assisted persons advising of the requirement for accurate and complete information in the petition and the disclosure of all assets and liabilities.[60] Section 528, in turn, requires that a contract between a debt relief agency

and an assisted person be in writing and "clearly and conspicuously" explain both the scope of services that the agency will provide and the fees or charges for such services.[61] In other words, it requires a written retainer agreement between debtor and counsel to set forth what will be done and the cost. The contract requirements of § 528 must be fulfilled within five days of the first date on which the agency provided bankruptcy assistance services to the assisted person, and before the filing of the assisted person's petition.[62] Section 526(c), in turn, provides in relevant part that:

> (c)(1) Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 **shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person**.
>
> (2) Any debt relief agency shall be liable to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs if such agency is found, after notice and a hearing, to have-
>
>> (A) intentionally or negligently failed to comply with any provision of this section, section 527, or section 528 with respect to a case or proceeding under this title for such assisted person . . . .[63]

The language of § 526 is plain and unambiguous. Consequently, courts recognize that "[v]iolations of these sections are harsh for debt relief agencies. Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with [Sections 526–528] . . . shall be void" and may only be enforced by the assisted person.[64] "The remedy for noncompliance with [Sections 526–528] is not a sanction, but rather contract voidance and possible fee disgorgement."[65] In instances of §§ 526–528 violations, bankruptcy courts may order fees to be disgorged partially and in their entirety depending on the debtor's willingness to pay anything.[66]

In *In re Seare*, while the attorney provided a written contract to the debtors on the same day as the initial consultation, which was in compliance with § 528, he failed to produce a fully

11

executed contract because the attorney did not sign the retainer agreement. The attorney also failed to "'clearly and conspicuously' explain the scope of services and fees when the debtors retained him."[67] The court held that the attorney's "noncompliance with Sections 526 and 528 render[ed] him liable to the Debtors 'in the amount of any fees or charges in connection with providing bankruptcy assistance' to them. In other words, he [was] liable for the entirety of his attorney's fees."[68] The court held that "total disgorgement is the most appropriate way to promote compliance with Sections 526–28."[69]

In *In re Hanawahines*, the court found that debtors' counsel violated § 526(a)(1) of the Bankruptcy Code because it requires a "debt relief agency" to "not fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a [bankruptcy] case of proceeding."[70] Debtors' counsel in *Hanawahines* failed to perform all of the services promised in the retainer agreement.[71] Because a violation of § 526(a) "voids the agreement between the debt relief agent and the debtor[,]" the court held that the law firm's retainer agreement with the debtors was void and required disgorgement of all attorney's fees and costs.[72]

### B. Counsel Failed to Provide Debtor with the Mandatory Written Disclosures Required by § 527

Counsel Walter D. Nealy, Esq. is a consumer bankruptcy attorney. Therefore, he qualifies as a "debt relief agency" as defined in the Bankruptcy Code.[73] Counsel has been practicing in the Bankruptcy Court for the District of New Jersey for numerous years, generally representing debtors. His practice predates BAPCPA changes. Here, Counsel provided "bankruptcy assistance" to Debtor when he gave pre-bankruptcy advice, filed her bankruptcy petition, and prepared documentation related to Debtor's bankruptcy case.[74] Debtor Sharon Davis is an

"assisted person" whose debts consist primarily of consumer debts.[75] Accordingly, Counsel was required to provide the disclosures in compliance with §§ 527–528 to Debtor.

Counsel responded to the Court's queries in a flippant manner and appeared obstinate in the initial Disgorgement Hearing while at the same time demonstrating a complete unfamiliarity with the law in question. Counsel attempted to refresh his recollection by taking a minute at the hearing to review the referenced sections of the Bankruptcy Code. It was clear to the Court, however, that Counsel's reading failed to spark meaningful knowledge or remembrance of the subject Bankruptcy Code sections. The Court had to educate Counsel on the mandatory written disclosure requirements in § 527 and § 528. Not only was Counsel *entirely* unfamiliar with the §§ 526–528 requirements when asked about them on the record, but that unfamiliarity led to Counsel having to admit he failed to comply with § 527's written notice requirement.

At the close of the initial Disgorgement Hearing, Counsel asked the Court for the opportunity to brief possible common law remedies under *quantum meruit*. Counsel was insistent that this remedy applied to the matter at hand, even when the Court questioned how an equitable common law principle could trump a strict liability federal statute enacted and codified by Congress. The Court granted Counsel's request to brief the matter because the Court raised the issues related to §§ 526, 527, and 528 *sua sponte* at the hearing although the issue of disgorgement was on notice to Counsel. The Court set forth the filing deadlines on the record and memorialized the deadlines on the docket. Counsel's briefing deadline came and went. Counsel failed to file any supplement to support his oral *quantum meruit* argument.

At the continued Disgorgement Hearing, Counsel conveniently asserted that he prepared an opposition, but inadvertently failed to file it. The Court finds Counsel's assertion to be a disingenuous statement. He might as well have stated "the dog ate my homework."[76] Having

13

failed to supply the Court with additional pleadings, Counsel stated that he relied on his previously filed opposition. Simply, the continued hearing was a complete waste of time since Counsel failed to file anything new. The Court already reviewed the previous submission and found no persuasive argument that would deter the Court from finding Counsel failed to comply with §§ 526, 527, and 528. Such a failure has consequences.

The statutory mandate is clear and unambiguous. Therefore, "the sole function of the court is to enforce it according to its terms."[77] Although the precise violations in *Hanawahines* and *Seare* are different than those of this case, the Court finds those decisions persuasive. The consequence of noncompliance is the same here as it is for the noncompliance in those cases. Walter D. Nealy, Esq. blatantly disregarded the requirements in the Bankruptcy Code. Pursuant to § 526, the contract for bankruptcy assistance between Counsel and Debtor is void because Counsel failed to comply with § 527.[78]

The most incredible part of all of this is that not only did Counsel violate the Bankruptcy Code, he also refused to acknowledge he committed a serious error. Counsel showed no remorse to the Court when he appeared, not once, but twice. To the Court's knowledge, Counsel never offered to voluntarily refund the amounts Debtor paid him. Counsel's lack of contrition and overall handling of his mistake is not a good look. But ultimately, it is the Debtor's decision as to whether she wishes to pay Counsel anything.[79] Section 526 states Debtor is the only one who can enforce the terms of the contract after it is deemed void. Here, Debtor stated that she does not wish to pay Counsel anything. Instead, Debtor wants all of her money back, which she will receive.

Counsel should not be surprised by the outcome of this decision. The Court made its disapproval of Counsel's actions quite clear at the Disgorgement Hearings. Further, the Court

14

finds Counsel's violations egregious because of the nature of the case. Many potential clients that seek legal help face various hardships. But debtors who turn to attorneys for help filing bankruptcy are particularly vulnerable individuals. To play fast and loose with the Bankruptcy Code requirements that were enacted to protect debtors is a disservice to those clients. Counsel also made misstatements in pleadings filed with the Court, which ordinarily might lead to the Court issuing an Order to Show Cause as to why sanctions should not be issued. But the outcome of this decision suffices and the Court need not further examine Counsel's "mistakes" by issuing an Order to Show Cause. However, the Court strongly recommends that Counsel show greater care in his future interactions with his clients and the Court.

The Court limits the decision to Counsel disgorging all monies the Debtor paid him, which total $3,903.07 ($3,473.07 in legal fees and $430.00 in costs).[80] The Debtor handled the Disgorgement Motion *pro se*. Therefore, she incurred no further fees to prosecute the motion. Further, Debtor did not demonstrate, nor did the Court observe any actual damages. Accordingly, Counsel must disgorge all monies paid to him by the Debtor – both fees and costs.

## CONCLUSION

For the foregoing reasons, Debtor's Disgorgement Motion is GRANTED. An appropriate Order will enter.

Dated: August 29, 2019

*Stacey L. Meisel*
Honorable Stacey L. Meisel
United States Bankruptcy Judge

---

[1] Docket No. 63.
[2] Docket No. 1.
[3] Docket No. 2.

---

[4] In all instances unless stated otherwise and until the Withdrawal Motion, discussed *infra*, Counsel's use of ECF in this case is on behalf of Debtor. Counsel is subject to the Rules governing ECF, which he agreed to abide when obtaining the right to utilize ECF. *See* L.Civ.R. 5.2; L.Civ.R., ELECTRONIC CASE FILING POLICIES AND PROCEDURES, *as amended* April 3, 2014. Additionally, when the Opinion refers to Debtor filing pleadings in this case, she was represented by Counsel unless and until stated otherwise.
[5] Docket No. 1.
[6] *Id.*
[7] *Id.*
[8] Docket No. 11.
[9] Docket No. 13.
[10] Docket No. 15.
[11] Docket Nos. 21, 24, and 32.
[12] Docket No. 26.
[13] Docket Nos. 27, 28 (withdrawn), and 30 (corrected brief).
[14] Docket No. 36.
[15] *Id.*
[16] Docket No. 38.
[17] Docket No. 41.
[18] Docket No. 43.
[19] Docket No. 44.
[20] Docket No. 49.
[21] Docket No. 50.
[22] Docket No. 51.
[23] Docket No. 53.
[24] Docket No. 55.
[25] Docket No. 53-1.
[26] Docket No. 58.
[27] Docket No. 63.
[28] *Id.*
[29] Docket No. 64.
[30] *Id.* at 1; Docket No. 1.
[31] Docket No. 64 at 1; Docket No. 1.
[32] Docket No. 64 at 2; Docket No. 64-9.
[33] Docket No. 64 at 2.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 3.
[37] *Id.*
[38] *Id.* at 4.
[39] Docket No. 64-4.
[40] Docket No. 64-5.
[41] Docket No. 64-6.
[42] Docket No. 64-7.
[43] Docket No. 64-8.
[44] Docket No. 64-9.
[45] Docket No. 68.
[46] *Id.* at 2.
[47] *Id.*
[48] *Id.*
[49] Docket No. 68-1.
[50] Docket No. 68 at 2.
[51] Docket No. 1.
[52] Docket Nos. 68 and 68-1.
[53] Docket No. 1.
[54] 11 U.S.C. §§ 526–528.

---

[55] *Id.* § 101(12A); *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 229–30, 130 S.Ct. 1324, 176 L.Ed.2d 79 (2010).

[56] 11 U.S.C. § 101(3) (2016). Debtor filed for bankruptcy on December 3, 2016. Therefore, the Court relies on the definition of "assisted person" provided by the statute effective in 2016.

[57] *Id.* § 101(8).

[58] *See id.* § 527.

[59] *Id.* § 527(d).

[60] *Id.* § 527(a).

[61] *Id.* § 528(a)(1).

[62] *Id.* § 528(a)(1).

[63] *Id.* § 526 (emphasis added).

[64] *In re Seare*, 493 B.R. 158, 214 (Bankr. D. Nev. 2013), *affirmed* 515 B.R. 599 (B.A.P. 9th Cir. 2014) (citing 11 U.S.C. § 526(c)).

[65] *Seare*, 493 B.R. at 216; *See In re Hanawahines*, 577 B.R. 573, 580 (Bankr. D. Haw. 2017).

[66] *Seare*, 493 B.R. at 218.

[67] *Id.* at 225 (citing 11 U.S.C. § 526(c)(2)).

[68] *Id.*

[69] *Id.*

[70] *Hanawahines*, 577 B.R. at 579–80.

[71] *Id.* at 580.

[72] *Id.*

[73] 11 U.S.C. § 101(12A); *Milavetz*, 559 U.S. at 229.

[74] 11 U.S.C. § 101(4A).

[75] *Id.* § 101(4); Docket No. 1 at 6.

[76] *See Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294–96 (D.C. Cir. 2004).

[77] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

[78] *See* 11 U.S.C. § 526(c)(1); *Seare*, 493 B.R. at 225.

[79] *See* 11 U.S.C. § 526(c)(1).

[80] *See id.* § 526(c)(2)(C).